1

2

3

4

5

6

7

8    # UNITED STATES DISTRICT COURT

9    ## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  KAHEAL PARRISH, | Case No.  1:19-cv-00490-NONE-BAM (PC) |
| 12          Plaintiff, | ORDER DISCHARGING ORDER TO SHOW |
| 13      v. | CAUSE WHY ACTION SHOULD NOT BE DISMISSED FOR FAILURE TO EXHAUST (ECF No. 13) |
| 14  BUGARIN, *et al.*, | |
| 15          Defendants. | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED |
| 16 | COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON |
| 17 | COGNIZABLE CLAIMS |
| 18 | (ECF No. 1) |
| 19 | **THIRTY (30) DAY DEADLINE** |

20

21       Plaintiff Kaheal Parrish ("Plaintiff") is a state prisoner proceeding *pro se* in this civil

22  rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on April 15, 2019.  (ECF

23  No. 1.)

24  **I.      Order to Show Cause Regarding Failure to Exhaust Prior to Filing Suit**

25       On May 31, 2019, the Court issued an order for Plaintiff to show cause why this action

26  should not be dismissed, without prejudice, for failure to exhaust his administrative remedies in

27  compliance with the Prison Litigation Reform Act prior to filing suit.  (ECF No. 13.)  Following

28  an extension of time, Plaintiff filed a response to the order to show cause on July 8, 2019.  (ECF

1

1   No. 19.)

2       In his response, Plaintiff argues that his complaint plausibly alleges that his administrative

3   remedies were unavailable to him.  (ECF No. 19).  Specifically, when Plaintiff advised Defendant

4   Camargo of his intent to file an emergency 602 grievance appeal, Defendant Camargo not only

5   responded with a threat of issuing a rules violation report against Plaintiff, Defendant Camargo

6   did in fact generate a retaliatory RVR against Plaintiff.  Plaintiff further argues that in his

7   complaint, he alleges that Defendant Martinez threatened Plaintiff when he told Plaintiff to

8   withdraw his appeal or Plaintiff would be a program failure.  (Id.)

9       Based on a review of Plaintiff's response to the order to show cause and the allegations in

10  the complaint, the Court finds that, at the pleading stage, Plaintiff has sufficiently alleged

11  compliance with the requirement to exhaust available administrative remedies.[1]  Accordingly, the

12  order to show cause is discharged, and Plaintiff's complaint, filed April 15, 2019, is before the

13  Court for screening.

14  **II.      Screening Requirement and Standard**

15      The Court is required to screen complaints brought by prisoners seeking relief against a

16  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

17  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

18  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

19  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

20      A complaint must contain "a short and plain statement of the claim showing that the

21  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

22  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

23  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

24  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken

25  as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores,

26  Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

27  _____

28  [1] Sufficiency of the pleading does not preclude the filing of a later motion for summary judgment
    on the ground that Plaintiff failed to exhaust his administrative remedies.

1    To survive screening, Plaintiff's claims must be facially plausible, which requires

2    sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

3    for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S.

4    Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted

5    unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

6    plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

7    **III.    Plaintiff's Allegations**

8    Plaintiff is currently housed at R.J. Donovan Correctional Facility in San Diego,

9    California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at

10    California State Prison – Corcoran ("CSPC") in Corcoran, California.  Plaintiff names the

11    following defendants: (1) Bugarin, Facility Captain; (2) J. Martinez, Correctional Sergeant; and

12    (3) B. Camargo, Correctional Officer.  Plaintiff alleges as follows:

13    At all times mentioned in the complaint, Plaintiff was/is a participant in the California

14    Department of Corrections and Rehabilitation ("CDCR") Mental Health Services Delivery

15    System ("MHSDS") at the Enhanced Out Patient ("EOP") level of care.  EOP is a special

16    program for prisoners who are gravely mentally disabled and unable to care for themselves in the

17    prison general population setting.

18    On January 17, 2019, a clinical psychologist assigned as Plaintiff's Primary Clinician

19    ("PC") generated a CDCR 128-B chrono detailing homicidal ideation toward any potential

20    cellmate Plaintiff suffered.  The chrono is attached to the complaint as Exhibit A.  (ECF No. 1, p.

21    11.)  The chrono was generated in support of a basis for single cell housing until Plaintiff

22    received some type of MHSDS treatment designed to teach Plaintiff how to cope in a double cell

23    living environment, however, before receiving said treatments Plaintiff was transferred to CSPC

24    in February 2019.

25    On February 27, 2019, Defendant Camargo came to Plaintiff's cell and said Plaintiff had

26    to accept a cellmate.  Fluxed by fear and anxiety, Plaintiff told Defendant Camargo a mistake was

27    being made to force double cell housing, since Plaintiff had not been given the necessary

28    treatment to cope in such environment.  Defendant Camargo then said "where did you get that

3

nonsense from" and when Plaintiff showed Defendant Camargo the CDCR 128-B chrono at issue, Defendant Camargo laughed and said "we don't care about this kind of shit here; in Corcoran you gonna have to kill your cell mate to be taken seriously." (ECF No. 1, p. 6.)

When Plaintiff responded that he did not want to kill a cellmate or die by one, Defendant Camargo said "your in Corcoran now so it's kill or be killed, so what are you gonna do" and when Plaintiff said that he wanted to file an emergency appeal, Defendant Camargo said "since you wanna write a 602 your not only getting a 115," a Rules Violation Report ("RVR"), "for refusing a cellmate but I'm also gonna make sure you go back to committee a program failure to loose all your shit." Plaintiff states that under CDCR Policy, two or more RVR's within a 180-day period renders one a program failure subject to loss by confiscation of all personal property.

Fluxed by continued fear and anxiety over Defendant Camargo's "Corcoran's kill or be killed" rule, Plaintiff filed an emergency appeal reporting ongoing homicidal ideation on or about March 2019. On April 5, 2019, Defendant Martinez came to interview Plaintiff and immediately said "did Officer Camargo tell you how we do things in Corcoran" and when Plaintiff acknowledged, Defendant Martinez then said "well withdraw this appeal or your gonna be a program failure." When Plaintiff said again that he needed MHSDS treatment in order to cope in a double cell environment, Defendant Martinez asked "what do the voices you hear tell you to do to a cellmate." Plaintiff reiterated what was described in the appeal. Defendant Martinez generated a second RVR, charging Plaintiff this time with threatening the life of a prisoner.

Plaintiff alleges that Defendant Bugarin, as facility captain, ratified the conduct of Defendants Martinez and Camargo, as Defendant Bugarin then acted as chairperson over the committee described by Defendant Camargo to impose program failure restrictions.

Plaintiff alleges that the described conduct by Defendants, and each of them, was imposed because of MHSDS needs and in ongoing retaliation for filing a CDCR grievance which did not advance some legitimate correctional goal.

Plaintiff seeks declaratory relief and monetary damages.

///

///

4

## IV.    Discussion

### A.    Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be
> subjected, any citizen of the United States ... to the deprivation of any rights,
> privileges, or immunities secured by the Constitution ... shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint fails to link Defendant Bugarin to any wrongful conduct. Plaintiff states that Defendant Bugarin acted as the chairperson over the committee that imposes program failure restrictions, but he does not state that Defendant Bugarin or the committee ever actually imposed any program failure restrictions on Plaintiff.  In any amended complaint, Plaintiff must link each individual defendant to a specific act or omission that violated Plaintiff's rights.

### B.    Supervisory Liability

Insofar as Plaintiff is attempting to sue Defendant Facility Captain Bugarin based on his supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045

1    (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett,

2    567 F.3d 554, 570 (9th Cir. 2009).  Supervisory liability may also exist without any personal

3    participation if the official implemented "a policy so deficient that the policy itself is a

4    repudiation of the constitutional rights and is the moving force of the constitutional violation."

5    Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations

6    marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

7         Here, Plaintiff states only that Defendant Bugarin, as Facility Captain, ratified the conduct

8    of Defendants Martinez and Camargo because he was the chairperson of the committee that

9    imposed program failure restrictions.  Plaintiff has failed to establish that Defendant Bugarin

10   participated in or directed any constitutional violation or that he implemented a policy so

11   deficient that it was the moving force of any constitutional violation.

12        **C.      First Amendment – Retaliation**

13        "Prisoners have a First Amendment right to file grievances against prison officials and to

14   be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

15   (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) ).  "Within the prison context, a

16   viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

17   state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

18   conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

19   (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson,

20   408 F.3d 559, 567–68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must

21   establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34

22   F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

23        At the pleading stage, Plaintiff has stated a cognizable claim for retaliation in violation of

24   the First Amendment against Defendants Camargo and Martinez.

25        **D.      False RVRs**

26        Although not entirely clear, Plaintiff's complaint suggests that Defendants Camargo and

27   Martinez both generated RVRs based on false accusations.  However, inmates do not have any

28   due process right to be free from false disciplinary charges.  See Freeman v. Rideout, 808 F.2d

6

1   949, 951 (2d Cir. 1986) (inmates have "no constitutionally guaranteed immunity from being

2   falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty

3   interest," provided that they are "not . . . deprived of a protected liberty interest without due

4   process of law."); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims

5   based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance

6   procedure, standing alone, do not state constitutional claims.").

7          Plaintiff's claim that any defendant wrote a false disciplinary charge fails to state a

8   cognizable claim.

9          **E.      Discrimination**

10         In his complaint, Plaintiff alleges that his right to be free from discrimination has been

11  violated.  It appears Plaintiff may be attempting to raise a claim under the Equal Protection

12  Clause of the Fourteenth Amendment.

13         The Equal Protection Clause requires that persons who are similarly situated be treated

14  alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, (1985); Shakur v.

15  Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by

16  showing that defendants intentionally discriminated against a plaintiff based on his membership

17  in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690,

18  702– 03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly

19  situated individuals were intentionally treated differently without a rational relationship to a

20  legitimate state purpose, Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601–02 (2008); Village

21  of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d

22  580, 592 (9th Cir. 2008).

23         Plaintiff has not stated a cognizable equal protection claim.  Plaintiff does not allege that

24  he was discriminated against because of his membership in any protected class.  He also does not

25  allege that he was intentionally treated differently than other similarly situated inmates without a

26  rational relationship to a legitimate state purpose.  Plaintiff will be given leave to cure these

27  deficiencies to the extent he is able to do so in good faith.

28  ///

7

**IV.   Conclusion and Order**

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim retaliation in violation of the First Amendment against Defendants Camargo and Martinez. However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendant.  Plaintiff will be granted leave to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the cognizable claims identified by the Court, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims.  The Court will then recommend that the remaining claims be dismissed from this action, and then initiate the process for service of the complaint.

If Plaintiff wishes to file an amended complaint, any such amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a complaint form;

///

///

8

2.   Within thirty (30) days from the date of service of this order, Plaintiff must either:

    a.   File a first amended complaint curing the deficiencies identified by the Court in this order; or

    b.   Notify the Court in writing that he does not wish to file a first amended complaint and he is willing to proceed only on his claims for retaliation in violation of the First Amendment against Defendants Camargo and Martinez; and

3.   **If Plaintiff fails to comply with this order, the Court will recommend dismissal of this action, without prejudice, for failure to obey a court order and for failure to prosecute**.

IT IS SO ORDERED.

Dated:   **August 19, 2020**                 /s/ *Barbara A. McAuliffe*

                                                             UNITED STATES MAGISTRATE JUDGE