1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAHEAL PARRISH, | Case No.  1:19-cv-00490-NONE-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| BUGARIN, *et al.*, | (ECF Nos. 1, 22, 25) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

## I.    Background

Plaintiff Kaheal Parrish ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.

On August 19, 2020, the Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable claim of retaliation in violation of the First Amendment against Defendants Camargo and Martinez, but failed to state any other cognizable claims against any other defendants.  (ECF No. 22.)  The Court ordered Plaintiff to either file a first amended complaint or notify the Court of his willingness to proceed only on the cognizable claims identified by the Court.  (Id.)  Following an extension of time, on October 2, 2020 Plaintiff notified the Court of his willingness to proceed on the cognizable claims identified by the Court.  (ECF No. 25.)

In his notification, Plaintiff also stated that he wishes to preserve his objection to a portion of the Court's screening order that found Plaintiff had not stated a cognizable Equal Protection

1   Clause claim.  (Id.)  While the Court notes the objections here, Plaintiff is informed that he may

2   wish to preserve these objections by filing them in response to the instant findings and

3   recommendations for consideration by the District Judge.

4   **II.      Screening Requirement and Standard**

5          The Court is required to screen complaints brought by prisoners seeking relief against a

6   governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

7   § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

8   or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

9   relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

10          A complaint must contain "a short and plain statement of the claim showing that the

11   pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

12   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

13   conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

14   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

15   true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc.,

16   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

17          To survive screening, Plaintiff's claims must be facially plausible, which requires

18   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

19   for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S.

20   Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted

21   unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

22   plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

23          **A.      Allegations in Complaint**

24          Plaintiff is currently housed at R.J. Donovan Correctional Facility in San Diego,

25   California.  The events in the complaint are alleged to have occurred while Plaintiff was housed at

26   California State Prison – Corcoran ("CSPC") in Corcoran, California.  Plaintiff names the

27   following defendants: (1) Bugarin, Facility Captain; (2) J. Martinez, Correctional Sergeant; and

28   (3) B. Camargo, Correctional Officer.  Plaintiff alleges as follows:

1         At all times mentioned in the complaint, Plaintiff was/is a participant in the California

2 Department of Corrections and Rehabilitation ("CDCR") Mental Health Services Delivery

3 System ("MHSDS") at the Enhanced Out Patient ("EOP") level of care.  EOP is a special

4 program for prisoners who are gravely mentally disabled and unable to care for themselves in the

5 prison general population setting.

6         On January 17, 2019, a clinical psychologist assigned as Plaintiff's Primary Clinician

7 ("PC") generated a CDCR 128-B chrono detailing homicidal ideation toward any potential

8 cellmate Plaintiff suffered.  The chrono is attached to the complaint as Exhibit A.  (ECF No. 1, p.

9 11.)  The chrono was generated in support of a basis for single cell housing until Plaintiff

10 received some type of MHSDS treatment designed to teach Plaintiff how to cope in a double cell

11 living environment, however, before receiving said treatments Plaintiff was transferred to CSPC

12 in February 2019.

13         On February 27, 2019, Defendant Camargo came to Plaintiff's cell and said Plaintiff had

14 to accept a cellmate.  Fluxed by fear and anxiety, Plaintiff told Defendant Camargo a mistake was

15 being made to force double cell housing, since Plaintiff had not been given the necessary

16 treatment to cope in such environment.  Defendant Camargo then said "where did you get that

17 nonsense from" and when Plaintiff showed Defendant Camargo the CDCR 128-B chrono at issue,

18 Defendant Camargo laughed and said "we don't care about this kind of shit here; in Corcoran you

19 gonna have to kill your cell mate to be taken seriously."  (ECF No. 1, p. 6.)

20         When Plaintiff responded that he did not want to kill a cellmate or die by one, Defendant

21 Camargo said "your in Corcoran now so it's kill or be killed, so what are you gonna do" and

22 when Plaintiff said that he wanted to file an emergency appeal, Defendant Camargo said "since

23 you wanna write a 602 your not only getting a 115," a Rules Violation Report ("RVR"), "for

24 refusing a cellmate but I'm also gonna make sure you go back to committee a program failure to

25 loose all your shit."  Plaintiff states that under CDCR Policy, two or more RVR's within a 180-

26 day period renders one a program failure subject to loss by confiscation of all personal property.

27         Fluxed by continued fear and anxiety over Defendant Camargo's "Corcoran's kill or be

28 killed" rule, Plaintiff filed an emergency appeal reporting ongoing homicidal ideation on or about

March 2019.  On April 5, 2019, Defendant Martinez came to interview Plaintiff and immediately said "did Officer Camargo tell you how we do things in Corcoran" and when Plaintiff acknowledged, Defendant Martinez then said "well withdraw this appeal or your gonna be a program failure."  When Plaintiff said again that he needed MHSDS treatment in order to cope in a double cell environment, Defendant Martinez asked "what do the voices you hear tell you to do to a cellmate."  Plaintiff reiterated what was described in the appeal.  Defendant Martinez generated a second RVR, charging Plaintiff this time with threatening the life of a prisoner.

Plaintiff alleges that Defendant Bugarin, as facility captain, ratified the conduct of Defendants Martinez and Camargo, as Defendant Bugarin then acted as chairperson over the committee described by Defendant Camargo to impose program failure restrictions.

Plaintiff alleges that the described conduct by Defendants, and each of them, was imposed because of MHSDS needs and in ongoing retaliation for filing a CDCR grievance which did not advance some legitimate correctional goal.

Plaintiff seeks declaratory relief and monetary damages.

**B.     Discussion**

**1.     Linkage**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, (1978); Rizzo v. Goode, 423 U.S. 362, (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

1      Here, Plaintiff's complaint fails to link Defendant Bugarin to any wrongful conduct.

2  Plaintiff states that Defendant Bugarin acted as the chairperson over the committee that imposes

3  program failure restrictions, but he does not state that Defendant Bugarin or the committee ever

4  actually imposed any program failure restrictions on Plaintiff.

5             **2.**      **Supervisory Liability**

6      Insofar as Plaintiff is attempting to sue Defendant Facility Captain Bugarin based on his

7  supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for

8  the actions or omissions of their subordinates under the theory of respondeat superior.  Iqbal, 556

9  U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing

10  v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934

11  (9th Cir. 2002).

12      Supervisors may be held liable only if they "participated in or directed the violations, or

13  knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045

14  (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v.

15  Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Supervisory liability may also exist without any

16  personal participation if the official implemented "a policy so deficient that the policy itself is a

17  repudiation of the constitutional rights and is the moving force of the constitutional violation."

18  Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations

19  marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

20      Here, Plaintiff states only that Defendant Bugarin, as Facility Captain, ratified the conduct

21  of Defendants Martinez and Camargo because he was the chairperson of the committee that

22  imposed program failure restrictions.  Plaintiff has failed to establish that Defendant Bugarin

23  participated in or directed any constitutional violation or that he implemented a policy so

24  deficient that it was the moving force of any constitutional violation.

25             **3.**      **First Amendment – Retaliation**

26      "Prisoners have a First Amendment right to file grievances against prison officials and to

27  be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

28  (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) ).  "Within the prison context, a

1   viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

2   state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

3   conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

4   (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson,

5   408 F.3d 559, 567–68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must

6   establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34

7   F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

8        At the pleading stage, Plaintiff has stated a cognizable claim for retaliation in violation of

9   the First Amendment against Defendants Camargo and Martinez.

10              **4.     False RVRs**

11        Although not entirely clear, Plaintiff's complaint suggests that Defendants Camargo and

12   Martinez both generated RVRs based on false accusations.  However, inmates do not have any

13   due process right to be free from false disciplinary charges.  See Freeman v. Rideout, 808 F.2d

14   949, 951 (2d Cir. 1986) (inmates have "no constitutionally guaranteed immunity from being

15   falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty

16   interest," provided that they are "not . . . deprived of a protected liberty interest without due

17   process of law.");  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims

18   based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance

19   procedure, standing alone, do not state constitutional claims.").

20        Plaintiff's claim that any defendant wrote a false disciplinary charge fails to state a

21   cognizable claim.

22              **5.     Discrimination**

23        In his complaint, Plaintiff alleges that his right to be free from discrimination has been

24   violated.  It appears Plaintiff may be attempting to raise a claim under the Equal Protection

25   Clause of the Fourteenth Amendment.

26        The Equal Protection Clause requires that persons who are similarly situated be treated

27   alike.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, (1985); Shakur v.

28   Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by

1   showing that defendants intentionally discriminated against a plaintiff based on his membership

2   in a protected class, <u>Comm. Concerning Cmty. Improvement v. City of Modesto</u>, 583 F.3d 690,

3   702– 03 (9th Cir. 2009); <u>Serrano v. Francis</u>, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly

4   situated individuals were intentionally treated differently without a rational relationship to a

5   legitimate state purpose, <u>Engquist v. Oregon Dep't of Agr.</u>, 553 U.S. 591, 601–02 (2008); <u>Village</u>

6   <u>of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d

7   580, 592 (9th Cir. 2008).

8        Plaintiff has not stated a cognizable equal protection claim.  Plaintiff does not allege that

9   he was discriminated against because of his membership in any protected class.  He also does not

10  allege that he was intentionally treated differently than other similarly situated inmates without a

11  rational relationship to a legitimate state purpose.

12  **III.    Conclusion and Recommendation**

13       Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim of

14  retaliation in violation of the First Amendment against Defendants Camargo and Martinez.

15  However, Plaintiff's complaint fails to state any other cognizable claims for relief against any

16  other defendant.

17       Accordingly, it is HEREBY RECOMMENDED that:

18  1.  This action proceed on Plaintiff's complaint, filed April 15, 2019, (ECF No. 1), against

19      Defendants Camargo and Martinez for retaliation in violation of the First Amendment;

20      and

21  2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims

22      upon which relief may be granted.

23                                              ***

24       These Findings and Recommendations will be submitted to the United States District

25  Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after

26  being served with these Findings and Recommendations, Plaintiff may file written objections

27  with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

28  and Recommendations."  Plaintiff is advised that the failure to file objections within the specified

time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 7, 2020**                         /s/ _Barbara A. McAuliffe_
                                           UNITED STATES MAGISTRATE JUDGE